IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                    No. CR 23-00214 JB

MARIO OLAGUE-CORREA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objection to the Presentence Investigation Report and Sentencing Memorandum, filed October 3, 2024 (Doc. 126)("Objection"). Sentencing in this matter will take place on November 4, 2024. See Order Granting Government's Motion to Continue Sentencing at 1, filed October 21, 2024 (Doc. 130). The primary issue is whether the United States Probation Office's Presentence Investigation Report, filed June 17, 2024 (Doc. 86)("PSR"), incorrectly applies a 2-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purposes of manufacturing or distributing a controlled substance. Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court concludes that the PSR correctly applies a 2-level enhancement under § 2D1.1(b)(12). The Court thus overrules the Defendant's Objection.

## FACTUAL BACKGROUND

Defendant Mario Olague-Correa does not object to the PSR's facts, and the Court thus adopts them as to findings of fact. See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact"). Olague-Correa sold methamphetamine from two different addresses -- 3440 Ross Avenue Southeast, Albuquerque New Mexico, and 2910 Clover Lane Southwest, Albuquerque, New Mexico. See PSR ¶¶ 11-14,

at 5-6.  When federal agents execute a search warrant at 2910 Clover Lane Southwest, they find 4,476.7 net grams of methamphetamine, 15.972 net grams of fentanyl, a notebook and one sheet of paper with names and amounts, multiple firearms and ammunition rounds, and approximately $17,000.00 cash.  See PSR ¶ 16 at 7-8.  During the search, federal agents also find Olague-Correa, Brianna Astorga, Linda Madrid, and two minor children at the residence.  See PSR ¶ 16 at 7.  Olague-Correa represents, and the United States does not dispute, that 2910 Clover Lane Southwest is his sole residence.  See Objection at 3; PSR ¶ 47, at 13.

## PROCEDURAL BACKGROUND

On June 17, 2024, The USPO filed the PSR that applies a 2-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purposes of manufacturing or distributing a controlled substance.  See PSR ¶ 26, 11.  On October 3, 2024, Olague-Correa filed an Objection to the PSR, which contends that the 2-level § 2D1.1(b)(12) enhancement does not apply, because, while 2910 Clover Lane Southwest was "frequently used for the distribution of controlled substances," it is "also Mr. Olague-Correa's sole place of residence."  Objection at 3.  On October 7, 2024, the USPO filed an Addendum to the Presentence Report, which concludes that the § 2D1.1(b)(12) enhancement applies, because Olague-Correa had a possessory interest in, and controlled access to, the premises, which housed obvious drug-trafficking paraphernalia.  See Addendum to the Presentence Report at 1, filed October 7, 2024 (Doc. 128)("PSR Addendum").  On October 31, 2024, the United States filed a Government's Response to Defendant's Objection to Presentence Report and Supplement to Sentencing Memorandum, which argues that the PSR applies appropriately the 2-level § 2D1.1(b)(12) enhancement, because Olague-Correa admits that he sold approximately one pound of methamphetamine to an undercover federal agent and that federal agents found drugs, firearms, and cash when they searched his residence.  See

Government's Response to Defendant's Objection to Presentence Report and Supplement to Sentencing Memorandum at 1-3, filed October 31, 2024 (Doc. 132)("Objection Response").

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1). A presentence report must apply the advisory sentencing Guideline, meaning that it must:

  (A)  identify all applicable guidelines and policy statements of the Sentencing Commission;

  (B)  calculate the defendant's offense level and criminal history category;

  (C)  state the resulting sentencing range and kinds of sentences available;

  (D)  identify any factor relevant to:

   (i)  the appropriate kind of sentence, or

   (ii)  the appropriate sentence within the applicable sentencing range; and

  (E)  identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A presentence report also must provide additional information, including:

  (A)  the defendant's history and characteristics, including:

   (i)  any prior criminal record;

   (ii)  the defendant's financial condition; and

   (iii)  any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

  (B)  information that assesses any financial, social, psychological, and medical impact on any victim;

  (C)  when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

(D)     when the law provides for restitution, information sufficient for a restitution order;

(E)     if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

(F)     a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

(G)     any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR, 2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, it must present "information to cast doubt on" the PSR's recitation of the facts. See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculates a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g.,

United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently. If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court. If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). When resolving factual objections, the court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008). Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1] See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.). The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing." United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior

---

[1] There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

- 6 -

conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(citing Ring v. Arizona, 536 U.S. 584, 602 (2002); Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)).  In United States v. Booker, however, the Supreme Court held that, because the sentencing guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement."  (quoting United States v. Booker, 543 U.S. at 221)(United States v. Booker adds second alteration)).  More recently, the Supreme Court held that the Apprendi v. New Jersey requirements apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involves plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute

methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on the testimony of the United States' witnesses about the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and used that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit states that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker makes the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate

---

[2]Although the Tenth Circuit states in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant

---

since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not found yet that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is necessary to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement does not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitles the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributes, even though its findings increase the defendant's sentence from twenty years to consecutive forty-year terms). Subsequent to United States v. Washington, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit." United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").³  The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence.  See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315.  The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt."  United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting

---

³United States v. Hendrickson, 592 F. App'x 699 (10th Cir. 2014) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished).  The Court concludes that United States v. Hendrickson has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Alleyne v. United States, 570 U.S. at 112-14). Further, the Tenth Circuit has determined that a district court could use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's statutory sentencing range." United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## ANALYSIS

The Court overrules Olague-Correa's Objection, and concludes that the 2-level § 2D1.1(b)(12) enhancement applies, because the United States has shown, by a preponderance of evidence, that drug trafficking was one of Olague-Correa's primary uses of the premises. Olague-Correa asserts he maintained 2910 Clover Lane Southwest to live there and not to traffic drugs under § 2D1.1(b)(12). See Objection at 3. The Commentary to § 2D1.1 notes, however, that "manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained." U.S.S.G. § 2D1.1 cmt. n.17. The Tenth Circuit holds that the § 2D1.1(b)(12) enhancement may apply to a defendant's home and, collecting case law from other Courts of Appeals, provides relevant guidance:

> The enhancement clearly contemplates a premises with more than one primary use. Therefore, as [the defendant] concedes, a multiple use approach is applicable to cases, like this one, where the premises at issue is the defendant's home. See United States v. Henderson, 604 F. App'x 655, 658-59 (10th Cir. 2015)(unpublished)(applying enhancement where defendant used his home to distribute methamphetamine); see also United States v. Bell, 766 F.3d 634, 638 (6th Cir. 2014)("Living in a residence and cooking drugs in it can both be relevant purposes under the guideline. . . . [P]recedents under the guideline do not carve out residences as safe havens from being drug-production premises."); United States v. Miller, 698 F.3d 699, 707 (8th Cir. 2012)("§ 2D1.1(b)(12) applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question."). [The defendant] proposes that when the subject premises is the defendant's home, the enhancement applies "only when the defendant pervasively and persistently used his home to

further a drug business." . . . His proposal finds no support in either the guideline or case law.

The commentary to the guideline requires drug-related activity to be one of the defendant's primary uses of the premises. It admits to no exception because the premises is the defendant's home. It requires consideration of "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." U.S.S.G. § 2D1.1, comment. (n.17). Some circuits have concluded that when the premises at issue is the defendant's home, simply comparing the frequency of unlawful activity with the frequency of lawful activity is impractical. United States v. Contreras, 874 F.3d 280, 284 (7th Cir. 2017); Miller, 698 F.3d at 707. According to them, such comparison "would immunize every family home that is also used for drug distribution from being deemed an illegal maintained premises," Contreras, 874 F.3d at 284 (quotation marks omitted), because "[w]hen the premises in question [is] the defendant's family home, by definition it [is] used for that lawful purpose 100% of the time." Miller, 698 F.3d at 707. Such could not have been the intent of the guideline. Id. ("Congress . . . in directing the [United States Sentencing] Commission to adopt § 2D1.1(b)(12) surely intended to deter the manufacture and distribution of illegal drugs in 'crack houses' where children are being raised."). We agree in principle and offer an observation.

Most people do not occupy their home 100% of the time; they spend much time at work, on vacation, running errands, pursuing social activities, etc. While a home may not be occupied 100% of the time, it is considered to be a home 100% of the time in that it is always available to the owner (or renter), it contains most of the owner's possessions, and it is a safe haven. That same reasoning is apt in multiple use situations. Actual drug dealing may not be a constant in a home, but the home may well serve as a safe place to store drugs, cash derived from drug sales (thereby shielding it from official notice), and tools of the trade (such as equipment related to selling drugs and firearms), as well as serve as a headquarters for drug-related operations. With that in mind, one may use his home (in the broad sense of the word) for lawful purposes 100% of the time and also use it (in the same broad sense of the word) for unlawful drug activity 100% of the time. In other words, both simultaneous uses may well be primary.

The commentary does not require a comparison of the frequency of lawful and unlawful activity at the premises. It requires only that a court "consider" such frequency in deciding whether drug-related activities were a primary, rather than incidental, use of the premises. While it requires consideration of the frequency of unlawful and lawful activity at the premises, it does not foreclose consideration of other factors. Our case law, and that of other circuits, instructs that for drug-related activity to constitute a primary use of the residence, it must not only be frequent but also substantial. Henderson, 604 F. App'x at 659 ("[A]lthough the premises was used as a residence, the drug trafficking activities were frequent and substantial enough to warrant the enhancement."); see also Contreras, 874 F.3d at 284 ("Instead

>    of merely weighing the amount of legal activity against the illegal activity, the sentencing court should focus on both the frequency and significance of the illicit activities . . ."); Bell, 766 F.3d at 637 ("We assess the primary or principal use of the home . . . by comparing the frequency of lawful to unlawful use. At bottom, the question is whether Bell's home played a significant part in distributing drugs." (quotation marks omitted)); Miller, 698 F.3d at 707 ("§ 2D1.1(b)(12) applies when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also her family home at the times in question." (emphasis added)). The analysis comes down to a "totality of the circumstances" evaluation, something trial judges are well equipped for and regularly perform. And the frequent/substantial metric is a reciprocal sliding scale. A substantial drug distribution that regularly and quickly passes through the home (two or three days) on a bi-monthly or tri-monthly basis may qualify as a primary use of the premises for drug-related purposes much the same as an exquisitely frequent, but relatively paltry, operation.
>
>    A totality of the circumstances assessment includes: (1) the frequency and number of drugs sales occurring at the home; (2) the quantities of drugs bought, sold, manufactured, or stored in the home; (3) whether drug proceeds, employees, customers, and tools of the drug trade (firearms, digital scales, laboratory equipment, and packaging materials) are present in the home, and (4) the significance of the premises to the drug venture. See Henderson, 604 F. App'x at 658; United States v. Verners, 53 F.3d 291, 296-97 (10th Cir. 1995); see also Contreras, 874 F.3d at 284-85; United States v. George, 872 F.3d 1197, 1206 (11th Cir. 2017); Bell, 766 F.3d at 637; United States v. Johnson, 737 F.3d 444, 447-48 (6th Cir. 2013); Miller, 698 F.3d at 706-07.

!
United States v. Murphy, 901 F.3d 1185, 1190-92 (10th Cir. 2018)("Murphy")(second ellipses added, ellipses in parentheticals in Murphy)(footnotes omitted). Both before and after Murphy, the Court has held that § 2D1.1(b)(12) can apply to a defendant's primary residence. See United States v. Roybal, 188 F. Supp. 3d 1163, 1210 (D.N.M. 2016)(Browning, J.)(concluding that § 2D1.1(b)(12) applies to a defendant's residence, where authorities found large quantities of drugs and cash, as well as six cellular telephones and a digital scale, at the residence); United States v. Escatel-Pintado, No. CR 20-0076 JB/LF, 2021 WL 215331, at *6 (D.N.M. Jan. 21, 2021)(Browning, J.)(concluding that § 2D1.1(b)(12) applies to a defendant's residence, where the defendant admits that he came to the United States to deliver drugs, and authorities made controlled

heroin purchases and found drug-selling paraphernalia and two kilograms of heroin at the apartment). Applying the Murphy factors here, the Court concludes that the United States has shown, by a preponderance of evidence, that drug trafficking is one of Olague-Correa's primary uses of his home, given that federal agents conducted a controlled purchase there -- buying 865.8 net grams of methamphetamine -- and found large quantities of drugs and cash, multiple firearms, and a notebook and sheet of paper with names and amounts on the premises. See PSR ¶¶ 14, 16, at 6-8.

**IT IS ORDERED** that: (i) the Defendant's Objection to the Presentence Investigation Report and Sentencing Memorandum, filed October 3, 2024 (Doc. 126) is overruled; (ii) the 2-level § 2D1.1(b)(12) enhancement applies; (iii) the applicable offense level is 31; (iv) the applicable criminal history category is I; and (iii) the United States Sentencing Guidelines establish an imprisonment range of 168 to 195 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Katherine L. Lewis
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

　　*Attorneys for the Plaintiff*

Joachim Marjon
Marjon Law, LLC
Albuquerque, New Mexico

　　*Attorneys for the Defendant*